IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TONY ADALIUS SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-216-WHA |
| | ) | (WO) |
| | ) | |
| NURSE TERRY, a.k.a., Terri Denise Hay; | ) | |
| and DR. GURLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Tony Adalius Smith ("Smith"), a former inmate, alleging that the defendants acted with deliberate indifference to his health during a prior term of incarceration at the Coosa County Jail. Smith names Dr. Jerry Gurley and Nurse Terri Denise Hay as defendants in this cause of action. Smith seeks monetary damages for the alleged violation of his constitutional rights.

The defendants filed an answer, special report and supporting evidentiary materials, including affidavits and certified medical records, addressing Smith's deliberate indifference claim. In these documents, the defendants deny that they acted in violation of Smith's constitutional rights. After receipt of the defendants' special report, the court issued an order directing Smith to file a response to the report and advising him that such response should include affidavits or statements made under penalty of perjury and other relevant evidentiary materials. Doc. 14 at 2. This order specifically cautioned Smith that "the court may at any time [after expiration of the time for his response to the special report] and **without further notice to the**

**parties** (1) treat the special report and any evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." Doc. 14 at 2–3.  Smith filed a response to the defendants' report on July 5, 2012. Doc. 16.  In his response, Smith requests that summary judgment be granted in his favor. Doc. 16 at 10.  The court now deems it appropriate to treat the defendants' report and plaintiff's response as motions for summary judgment.  Thus, this case is now pending on the parties' motions for summary judgment.  Upon consideration of these motions and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted and the plaintiff's cross motion for summary judgment is due to be denied.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, affidavits and statements made under penalty of perjury], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material

fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24.

The defendants have met their evidentiary burden.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once the moving party meets its burden, the opposing "party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering disposition of a case on summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable factfinder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After this review, the court finds that the plaintiff has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  DISCUSSION

As discussed in detail below, Smith has failed to demonstrate a genuine dispute of material fact sufficient to preclude entry of summary judgment in favor of the defendants.

**A.      Applicable Legal Standard**

The state court record of Smith's conviction establishes that Smith was both a pretrial detainee and convicted inmate during the period of time the alleged constitutional violation occurred.  Specifically, Smith was held in the Coosa County Jail as a pretrial detainee from February 10, 2012 until his entry of a guilty plea to possession of a controlled substance on November 29, 2012. Doc. 28-1 at 38–42.  At the time Smith entered his guilty plea, the trial court found that Smith "act[ed] voluntarily, knowingly and in full understanding of his . . . rights and the consequences of pleading guilty[.]" Doc. 28-1 at 38.  The trial court imposed sentence upon Smith on this same day.  Thus, from the time of his guilty plea until his transfer to the custody of the Alabama Department of Corrections on December 5, 2012, Smith was confined in the jail as a convicted inmate.

With respect to those claims arising during his time as a pretrial detainee, Smith's allegations are considered under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime, whereas the Eighth Amendment's prohibition against cruel and unusual punishment governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees

in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986) ("For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment."); *Tittle v. Jefferson County Comm.*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial").

In a recent decision addressing a pretrial detainee's excessive force claim, the United States Supreme Court held that under the Fourteenth Amendment the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable. . . . A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The court in *Kinglsey* reaffirmed that a defendant "must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind. That is because . . . 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The Court further emphasized that the "guarantee of due process has [historically] been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property.'" *Id*.

The Supreme Court has not yet ruled on whether to extend the objective reasonableness

5

standard of review set forth in *Kingsley* to cases of pretrial detainees that do not involve the use of excessive force (i.e., cases challenging medical treatment or conditions of confinement). However, an extensive search of post-*Kingsley* cases indicates that the vast majority of federal courts, including the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees challenging medical treatment and other conditions. *E.g.*, *Massey v. Quality Correctional Health Care, Inc., et al.*, 2015 WL 852054 (M.D. Ala. Feb. 26, 2015), *aff'd*, 2016 WL 1138580 (11th Cir. 2016) (addressing claims of a pretrial detainee challenging the medical treatment provided to him while in a county jail, without reference to *Kingsley*, and applying the deliberate indifference standard to find that the defendants' actions did not rise to the level of deliberate indifference); *McBride v. Houston County Health Auth.*, 2015 WL 3892715, *10 & 15–20 (M.D. Ala. June 24, 2015) (recognizing the impact of *Kingsley* on excessive force claims brought by pretrial detainees but subsequently applying the deliberate indifference standard to the plaintiff pretrial detainee's medical treatment claim); *White v. Franklin*, 2016 WL 749063, at *5–8 (N. D. Ala. Jan. 28, 2016), *adopted*, 2016 WL 741962 (N.D. Ala. Feb. 25, 2016) (applying *Kingsley*'s objective reasonableness standard to pretrial detainee's claim of excessive force but addressing his claims of inadequate medical treatment under the deliberate indifference standard of the Eighth Amendment in accordance with prior Eleventh Circuit precedent); *Woodhouse v. City of Mount Vernon, et al.*, 2016 WL 354896, at *10 n.4 (S.D.N.Y. Jan. 26, 2016) (applying "a subjective standard to [detainee's] Fourteenth Amendment claim of deliberate indifference to serious medical needs, just as it would to an Eighth Amendment claim brought by a convicted prisoner," despite *Kingsley*); *Thomley v. Bennett, et al.*, 2016 WL 498436, at *7 (S.D. Ga. Feb. 8, 2016), *adopted*, 2016 WL 3454383 (S.D. Ga. Mar. 14, 2016) (finding *Kingsley* does not "provide[] the standard to be applied" to pretrial detainee's

medical treatment claims).

As indicated above, the Eleventh Circuit recently applied the deliberate indifference standard to a pretrial detainee's claims challenging the constitutionality of medical treatment provided to him by health care personnel at a county jail. *See Massey*, 2016 WL 1138580, at \*2. In affirming the trial court's decision to grant summary judgment for the defendants, the Court held:

> There is . . . no basis for [Plaintiff's] claim that [the defendant physicians'] diagnosis and treatment of his ailments rose to the level of deliberate indifference. There is a difference between "mere incidents of negligence or malpractice" and deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991). The former, "while no cause for commendation, cannot . . . be condemned as the infliction of punishment" in violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970, 1979 (1994). The latter, by contrast, is a violation of the Eighth Amendment, but requires the plaintiff to prove that the defendant knew of a serious risk to the plaintiff and affirmatively disregarded it. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999). There is no genuine dispute that [the jail physicians] actively attempted to diagnose and treat [Plaintiff]. The treatment they offered may not have been as effective or instantaneous as [Plaintiff] would have liked, but the bare fact that treatment was ineffectual or not immediately administered does not mean that those responsible for it were deliberately indifferent. Because the record does not establish a genuine dispute that [the attending physicians] made a good-faith effort to treat [Plaintiff's] ailments, summary judgment was appropriate.

*Id.* The Sixth, Seventh and Ninth Circuits are in accord. *See Baynes v. Cleland*, 799 F.3d 600, 617–18 (6th Cir. 2015); *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015); *Castro v. County of Los Angelse*, 797 F.3d 654, 664–65 (9th Cir. 2015).

Based on the foregoing authorities, the court deems it appropriate to apply the deliberate indifference standard to Smith's claims of inadequate medical treatment, rather than the objective reasonableness standard applied to the excessive force claim before the court in *Kingsley*.[1]

---

[1] Under the facts of this case as set forth herein, the court finds that regardless of the standard applied—deliberate indifference or objective reasonableness—Smith's claims do not survive summary judgment.

**B.      Denial of Adequate Medical Treatment**

Smith complains that the defendants acted with "deliberate indifference to [his] serious medical needs" during his incarceration in the Coosa County Jail. Doc. 1-1 at 6.  In support of this assertion, Smith contends that Nurse Hay refused to transfer him to a free-world hospital for assessment of his condition upon her initial examination on November 14, 2012 and merely referred him to one of the jail's physician, Dr. Gurley, for further evaluation. Doc 1-1 at 5.  Smith also alleges that Dr. Gurley mistakenly diagnosed him with Bell's palsy instead of a stroke—an affliction which he contends occurred at some point during his incarceration in the jail— improperly provided treatment for his condition, and failed to refer him to a specialist for examination. Doc. 1-1 at 5–6.  Finally, Smith asserts that Dr. Gurley should have ordered tests such as a CAT scan, MRI or brain scan, to ensure a proper diagnosis.

As stated above, to prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").  The Eleventh Circuit has held:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,*

429 U.S. 97, 105-07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  Thus, to proceed on a claim challenging the constitutionality of medical care under either standard of review, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment.  An allegation of negligence is insufficient to state a due process claim." *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (citations omitted); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) (holding that, due to "the state of mind requirement for all due process violations[,] . . . medical malpractice and negligence claims are not actionable under § 1983"); *Kingsley*, 135 S. Ct. at 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1999), for the proposition that "'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process'").

Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate, whether he is a pretrial detainee or convicted prisoner.  "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques . . . 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact inmate desires a different mode of diagnosis does not amount to deliberate indifference); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990)).

The evidentiary materials filed by the defendants, including affidavits and relevant medical records, address Smith's allegations of deliberate indifference.  A thorough review of these documentation demonstrates that the recitation of medical treatment set forth in these affidavits is corroborated by the objective records contemporaneously compiled with the treatment provided to Smith.  The medical records establish Smith prepared a sick call request on November 10, 2012 in which he stated "half of my face is numm [sic] on one side.  I don't feel one side of my face.  I don't know what it is but it don't hurts its totally numb." Doc. 13-3 at 6.  Upon receipt of this

request by medical personnel, Smith underwent an initial examination by the chief nurse, M. Hardin, on November 13, 2012.  At this time, Smith complained of numbness on the left side of his face and head which he advised began "4 to 5 days ago[.]" Doc. 13-3 at 7.  Nurse Hardin noted that Smith's vital signs were within normal range and determined that his pupils were equal, round, and reactive to light and accommodation. Doc. 13-3 at 7.  She further observed that Smith's "[b]ilateral grips [were] equal in hands & [he] pushes equally [with] both feet.  Denies weakness or unsteady gait." Doc. 13-3 at 7.  Nurse Hardin referred Smith to Nurse Hay for an evaluation the following day. Doc. 13-3 at 7.

In accordance with Nurse Hardin's referral, Nurse Hay conducted an examination of Smith on November 14, 2012.  During this examination, Smith complained of "pain to [his left] cheek area [and] to [left] jaw line.  Percussion performed [with] eyes closed states 'can't feel the pressure.'  Pin sticks to [left] cheek area & jaw.  States 'I can feel in some spots not in others, but body jumps with each stick.  [Complains of] metallic taste in mouth. [Vitals within normal range]." Doc. 13-3 at 7.  Nurse Hay observed "no life threatening" condition and referred Smith to Dr. Gurley for further evaluation.

Dr. Gurley first examined Smith on November 19, 2012, and responds to the claims presented by Smith as follows:

> Mr. Smith was housed at the Coosa County Jail for an extended period in 2012.  He had his initial inmate health assessment done on March 20, 2012. I reviewed the intake on April 2, 2012. There were no indications of any medical problems or medications reported by him on his intake. Mr. Smith has a history of poly substance abuse of cocaine and marijuana.
> The medical chart revealed 16 sick calls during the time of incarceration in Coosa County Jail. The majority of the sick calls were handled by the nursing staff with standard routine protocols for the problem or requests by the inmate. There was a request placed on September 4, 2012, for a rash and he was seen on September 10, 2012. He was treated appropriately for contact dermatitis, with no further complaints.

Mr. Smith had only one sick call that concerned facial numbness.  He also had a follow up medical visit approximately one week later.  The final sick call requests were hand written by the inmate including the [last] request [submitted by Smith] on December 3, 2012 [in which he merely sought to have his ear cleaned].

His first request [for treatment regarding] face numbness [was prepared by Smith] on November 10, 2012. He was seen by the chief nurse officer for QCHC at 9:30 p.m. on November 13, 2012. He complained that four or five days prior, he woke up with a left sided face and head numbness.  Also, he could not taste anything.  A review of the medical records shows that his vital signs were all normal and he had no fever. The neurological evaluation revealed that bilateral hand grips were equal, he pushed equally with his feet, and there was no evidence of any weakness or unsteady gait when seen by the nurse.

The following day Mr. Smith was seen . . . by the jail nurse who again evaluated the numbness in his left cheek and jaw. There was loss of sensation to pressure, but not to pin pricks.  His vital signs were again normal and he was placed on the doctor list for the following Monday.

Mr. Smith was evaluated by me on November 19, 2012. Such evaluation revealed numbness of the left side of the face and slight drooping of the left side of the mouth. All clinical signs and symptoms pointed to an assessment of Bell's palsy of the left face. It was important to note that he could close his eyelid on the left and had minimal drooping of the mouth on the left and showed some decreased ability to smile on this side.  The tympanic membranes (ears) were normal and there was numbness to the skin on the left side of the cheek.  The assessment at that time revealed a typical Bell's palsy (facial nerve paralysis). Mr. Smith was treated with a steroid medication (Medrol Dose Pack).  He was advised about causes of facial nerve paralysis and was given a potential prognosis, which most of the time [results in complete] recovery. He was also advised that in some instances there could be residual numbness and paralysis of the facial nerve. Mr. Smith understood his problem. On November 22, 2010, he complained of being dizzy and [throwing] up. [Smith advised that when he got up earlier in the day] he got dizzy [and] broke out in a sweat [at which time he called for the officer and] was [then taken to be] seen by the nurse. No vomitus was noted and he was alert and oriented x3. He had no evidence of diaphoresis or sweating and there was no noted vomitus of food on exam. Dr. Bates was called and he ordered treatment with antacids and antiemetic (Phenegran).

On November 26, 2012 at [3:45 p.m., after his return from a court appearance during which he advised the court of his decision to enter a guilty plea], Mr. Smith was noted to have signs and symptoms of nausea, vomiting and decreased ambulation and was also having some constipation. He complained of having a problem with walking and equilibrium. The Bell's palsy showed marked improvement. The eye lid showed no problems and there was no drooping of the mouth and the smile was equal but mild numbness still persisted in the left cheek. There was no problem with speech. He was oriented and alert and the rest of the cranial nerves were all within a normal range. The tympanic membranes were normal and the neck was supple. The abdomen was flat, soft, and bowel sounds were active. Mr. Smith was questioned about using a cane to walk.  [Smith advised]

[h]e was using [the cane] to stabilize [himself] because of his imbalance (equilibrium) so as not to fall. There was no abnormality of motor or sensory function. There was some question whether this was an additional viral illness, resolving Bell's palsy or whether Mr. Smith might have some additional exaggeration of signs and symptoms, possibly trying to get out of jail.

Mr. Smith was treated with a stool softener, a laxative (Miralax) and was started on an equilibrium medicine to help with the dizziness and equilibrium (Antivert). He was given an antihistamine and medicines for the stomach. Again, he was counseled on the Bell's palsy and the facial nerve paralysis. A CBC (complete blood count) and CMP (metabolic profile) were also performed. The results of the blood work were all normal, both complete blood count and the chemistry profile. Mr. Smith never complained of any leg numbness while at Coosa County Jail.

An inquiry to the Coosa County Jail Administrator, Captain Mike Mull, concerning Mr. Smith, revealed that at no time did Mr. Smith require assistance with walking or feeding at the facility, and he had no problems ambulating to the vehicle which transferred him to Kilby Prison. He had no problem with speech or ambulation. There was no time that Mr. Smith's medical requests were not acted on appropriately and in a timely manner. There was no indifference by any medical personnel in Mr. Smith's medical care. The explanation of the findings and assessment were in detail and in "lay terms". There was no evidence of a stroke (cerebral vascular accident) and Mr. Smith received timely care and the same treatment that he would have received in a private medical office.

Doc. 13-1 at 1–4. In his last sick call request dated December 3, 2012, two days prior to his transfer to the state prison system, Smith referenced the need to have his ear cleaned but made no complaint which could be associated with his having suffered a stroke. Doc. 13-3 at 1.

It is undisputed that the defendants examined the plaintiff each time he presented complaints relative to the condition made the basis of the instant complaint. The medical records likewise establish that Smith retained the ability to write and verbally communicate during the entirety of his confinement in the Coosa County Jail. In addition, Smith always appeared alert and oriented during his examinations and the cranial nerves remained within normal range. During their examinations, the defendants evaluated Smith's speech and motor skills, physically conducted tests on him—including testing his ability to feel sensations, use his extremities, speak, hear and see—and subjected him to blood and metabolic profiles. The defendants maintain that

the results of these tests failed to indicate the occurrence of a stroke, and instead indicated Smith suffered from Bell's palsy.  In accordance with their assessment of Smith's condition and pursuant to their professional judgment, the defendants provided the treatment they deemed necessary and appropriate to Smith.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the defendants did not violate Smith's constitutional rights as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  Although Smith alleges the defendants should have run additional tests to assist in the diagnosis and treatment of his condition, his mere desire for further testing, without more, fails to establish deliberate indifference. *E.g., Garvin*, 236 F.3d at 898 (holding that difference of opinion regarding manner in which to address a situation fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (holding that argument medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment").  In addition, Smith has failed to present any evidence indicating the defendants knew that the manner in which they provided treatment to him created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Smith's medical needs.  Moreover, under the circumstances of this case, the medical treatment provided to Smith was objectively reasonable.  Consequently, summary judgment is due to be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

14

1.      The defendants' motion for summary judgment (Doc. 13) be GRANTED.

2.      The plaintiff's motion for summary judgement (Doc. 16) be DENIED.

3.      Judgment be GRANTED in favor of the defendants.

4.      This case be dismissed with prejudice.

5.      No costs be taxed herein.

It is further ORDERED that on or before **September 6, 2016** the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 15th day of August, 2016.

_____/s/ Gray M. Borden_____
UNITED STATES MAGISTRATE JUDGE